UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION - FLINT

IN RE:

    MARLENE J. POWELL,                                  Case No. 08-30900-dof
                                                                             Chapter 7 Proceeding
                Debtor.                                   Hon. Daniel S. Opperman
_____/
COLLENE K. CORCORAN, Trustee,

    Plaintiff,

v.                                                                               Adversary Proceeding
                                                                               Case No. 08-3100-dof

MARLENE J. POWELL,

    Defendant.
_____/

## OPINION

Collene K. Corcoran, the Chapter 7 Trustee in this matter, filed the instant adversary proceeding seeking the denial of a discharge to the Defendant, Marlene Powell. Ms. Corcoran asserts that 11 U.S.C. § 727(a)(2), (3), (4), and (5) are sufficient grounds to deny this discharge. Ms. Powell does not agree with the Trustee's assessment and claims that she is entitled to a discharge pursuant to 11 U.S.C. § 727. The Court conducted a trial in this matter on June 16, 2009, and took this matter under advisement to issue this Opinion.

### Findings of Fact

The Defendant, Marlene Powell, received a Chapter 7 discharge in 1999, and subsequently filed two Chapter 13 cases. She filed another Chapter 7 Petition with this Court on March 7, 2008. Plaintiff was appointed the Chapter 7 Trustee in this case and began investigating the assets of the

1

Defendant. In particular, Plaintiff requested certain books and records of the Debtor, as well as entities known as Finance and Tax Services, Inc. ("FTS"), Michigan Real Estate Services ("MRES"), and Accounting Offices, Inc. ("AOI").

FTS is mentioned in the response to questions #10 and #18 in the Statement of Financial Affairs. First, in regard to the response to question #10, the Debtor indicated that she transferred her interest in FTS for $21,000 to Joyce Jones. The document supporting this transaction is a one page sales agreement admitted as Plaintiff's Exhibit 2 and Defendant's Exhibit A. The sales agreement recites that Ms. Jones was to forgive all loans made to the Debtor in the amount of $28,632.34, as well as to assume all liabilities of FTS. In exchange, the Debtor agreed to transfer Ms. Jones the stock of FTS. The information supplied in the Statement of Financial Affairs is inconsistent with the sales agreement. Second, the response to question #18 indicates that FTS was in the consultation and tax preparation business and was in existence from 1980 through December 31, 2006. The Defendant testified that originally her business was known as Marlene Howard Bookkeeping and later changed to AOI and finally FTS. AOI and FTS were and are two separate entities with separate tax identification numbers and with different ownership interests.

No mention is made of MRES in the Debtor's Schedules or Statement of Financial Affairs. As the Debtor testified, MRES was in the business of managing properties for investors and would collect rent, maintain various rental units, and then receive a commission of up to 10% in the event a unit was sold. MRES discontinued operations in 2007 in part because it was not generating sufficient revenue and because the Genesee County Sheriff's Department seized books and records regarding MRES. The seizure of these records is not recorded in the response to question #19(c) in the Statement of Financial Affairs, which states: "List all firms or individuals who at the time of

2

the commencement of this case were in possession of the books of account and records of the debtor. If any of the books of accounts and records are not available, explain.". As the Debtor testified, MRES was an assumed name.

The Defendant testified that from 2000 through 2006, Ms. Jones advanced monies in order to continue the FTS operations. From Defendant's testimony, Ms. Jones acquired corporate credit cards in her name. The Defendant testified that many of these credit cards were actually held by either FTS or AOI, but that the bills were sent to Ms. Jones. By 2006, Ms. Jones became concerned as to whether she would be repaid and ultimately agreed with Defendant that FTS should be transferred to her in exchange for the obligations paid by Ms. Jones. The Defendant testified that some of this debt was her own personal debt that Ms. Jones paid with credit cards. Per Ms. Jones, the $28,632.34 was calculated by her review of the credit card statements, including interest that was paid on the principal. As Ms. Jones testified, the principal balance was approximately $20,000, with the remainder being interest and late charges. The Defendant and Ms. Jones executed the sales agreement and then the Defendant worked for FTS in 2007 and part of 2008.

The initial first meeting of creditors was scheduled for April 14, 2008, but was adjourned to April 28, 2008, at the request of the Debtor. The first meeting of creditors was continued to May 12, 2008, and ultimately concluded on June 9, 2008. Plaintiff repeatedly requested documents from Debtor and received only a copy of the sales agreement and a few other documents related to FTS. After the filing of the adversary proceeding, Plaintiff filed a motion to compel, which prompted Defendant to submit a letter and enclosures on March 5, 2009, that in part responded to Plaintiff's request for documents in mid-2008. Some of these documents, however, raised additional issues, such as the details regarding a payment made to Judgment Asset Recovery on January 25, 2009, in

3

the amount of $7,720.88. This transfer was detailed in response to question #2 on the Statement of Financial Affairs, but through testimony at the June 16, 2009, trial and documents supplied to the Trustee, it appears that the payment made to this creditor was by a Fred Creger through his business known as Independent Telecommunications, Inc. In turn, Ms. Jones paid Mr. Creger and claimed that she was owed this money by the Debtor. Ms. Jones is not listed as a creditor in the original Schedules and Statement of Financial Affairs.

As of June 16, 2009, the Debtor had not amended her Schedules or Statement of Financial Affairs.

## Statement of Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(J) (objections to discharges).

## Applicable Statutes

11 U.S.C. § 727(a)(3) and (a)(5) state:

> (a) The court shall grant the debtor a discharge, unless (*) —
>
> . . . .
>
> (3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case;
>
> . . . .
>
> (5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities;

## Analysis

4

Section 727(a) of the Bankruptcy Code provides that a debtor is entitled to a discharge unless one or more of twelve exceptions is met. Although exceptions to discharge are strictly construed against a creditor (*See Rembert v. AT&T Universal Card Services, Inc.* (*In re Rembert*), 141 F.3d 277, 281 (6th Cir. 1998), "a discharge in bankruptcy is a privilege, not a right, and should only inure to the benefit of the honest debtor." *Wazeter v. Michigan National Bank (In re Wazeter)*, 209 B.R. 222, 226 (W.D. Mich. 1997). Pursuant to Federal Rule of Bankruptcy Procedure 4005, the burden of proof in objecting to a discharge under § 727 is on the plaintiff and must be established by a preponderance of the evidence. *Barclays/American Bus. Credit, Inc., v. Adams (In re Adams)*, 31 F.3d 389, 394 (6th Cir. 1994).

Section 727(a)(3)

A condition precedent to discharge is that the debtor must provide to his creditors enough information to ascertain the debtor's financial condition and to track his finances with substantial accuracy for a reasonable period in the past to the present. *Wazeter*, 209 B.R. at 227 (citing *In re Juzwiak*, 89 F.3d 424, 427 (7th Cir. 1996)). Creditors and courts are not required to speculate regarding the financial condition and history of the debtor or to reconstruct the debtor's financial affairs. *Wazeter,* 209 B.R. at 227. Intent is not an element of a 727(a)(3) exception to discharge. *Id.*

> A debtor is not required to keep books or records in any particular form, nor do the creditors have to establish an intent to conceal the financial condition, as long as complete disclosure is made so that the creditors are not required to guess at what actually occurred.

*In re Delancey*, 58 B.R. 762, 768 (Bankr. S.D.N.Y. 1986).

The party seeking the denial of a discharge has the burden of proving the inadequacy of the debtor's records. To determine whether the debtor's records are adequate, courts examine whether

5

the records are the type kept by a reasonably prudent debtor with the same occupation, financial structure, education, and experience. *Wazeter*, 209 B.R. at 227. "Where debtors are sophisticated in business, and carry on a business involving significant assets, creditors have an expectation of greater and better record keeping." *Union Planters Bank, N.A. v. Connors*, 283 F.3d 896, 900 (7th Cir. 2002) (citation omitted).

Once the moving party shows that there is not sufficient written evidence to ascertain the debtor's financial condition and history, then the burden shifts to the debtor to show that his failure to keep adequate records was justified in the circumstances. *Wazeter*, 209 B.R. at 227. To determine whether the inadequacy of the debtor's records was justifiable, courts look at a variety of factors, including the debtor's education, sophistication, business experience, size, and complexity of the debtor's business, debtor's personal financial structure, and any special circumstances. *Wazeter*, 209 B.R. at 230; *see also Dolin v. Northern Petrochemical Co. (In re Dolin)*, 799 F.2d 251 (6th Cir. 1986) (debtor's drug and gambling addictions did not justify his difficulty in recording his business transactions).

Courts will deny a discharge under section 727(a)(3) when there is evidence of debtor misbehavior. For example, in *In re Delancey*, 58 B.R. 762 (Bankr. S.D.N.Y. 1986), the debtor failed to produce records showing what he did with the proceeds from the sale of jewelry valued at over $269,000, and art valued at over $200,000. Debtor's failure to produce such records was not excused by his testimony that he simply did not maintain such records. *Id.* at 768. "The production of records to explain the disposition of substantial assets is a prerequisite to a debtor's relief from having to repay his creditors." *Id.* at 769.

In this case, the initial disclosures made by the Debtor in her Schedules and Statement of

6

Financial Affairs is, in many instances, wrong and, in other instances, misleading. MRES and AOI are simply not disclosed whatsoever. Even the most diligent trustee would be completely unable to ascertain that these assets existed by a review of the Schedules and Statement of Financial Affairs.

As disturbing, the Debtor misstated the details of the transfer of FTS to Ms. Jones. Not only is the amount incorrectly stated in the Statement of Financial Affairs, the nature of the assets transferred, namely personal property versus stock, is incorrect.

Likewise, the Debtor's statements regarding the payment to Judgment Asset Recovery is wrong. At first blush, the Trustee may think that a potential preference action existed. Instead, the $7,720.88 was paid by someone other than the Debtor, and the Debtor owed an additional $7,720.88 to Ms. Jones. Until early 2009, the Plaintiff had no idea that was the transaction that actually occurred and could have incurred unnecessary expense and costs, not only on behalf of the estate, but on behalf of the creditor in pursuing a preference that did not exist.

The Court notes that Defendant did finally produce a number of documents to the Plaintiff in March, 2009. No effort was taken, however, to correct or amend the schedules and statement of financial affairs.

Even as of the June 16, 2009, trial, the Trustee still has not been given sufficient information as to the nature of the Debtor's assets. For example, the Debtor's interest in FTS may have been transferred for $21,000 or $28,632.34. Both Ms. Jones and the Debtor testified that about $30,000 was owed by the Debtor to Ms. Jones and that this formed the basis for the consideration of the sale of the stock. Ms. Jones testified, however, that she did not receive stock and is uncertain of the exact location of the stock. According to Debtor, the Genesee County Sheriff's Department may have seized these books and records when the MRES documents were seized. Regardless, there is

7

no indication as to the value of FTS on the date of transfer in January, 2007, the date of the Debtor's Chapter 7 Petition in March, 2008, or today. Ms. Jones testified in her sworn statement under oath on April 16, 2009, that FTS was worth $50,000:

> Q: How much was the business worth when she gave it to you?
> A: I have no idea, probably 50,000.
> Q: And you only - - she only owed you $25,000 to $30,000 at that time?
> A: Plus penalties, plus interest.

(Sworn statement of Joyce Jones, Page 31, Lines 7 -10).

Ms. Jones confirmed that she did indicate the value of FTS was $50,000, but that she really meant to say that the gross revenue of FTS was $50,000 for 2008. The 2006 tax return for FTS, however, indicates gross revenue of $90,652. Neither Ms. Jones or the Defendant gave any explanation for these discrepancies.

Finally, the Debtor testified that the Genesee County Sheriff's Department seized the books and records of MRES and then finally advised her, through counsel, that the investigation was completed in late 2007. For whatever reason, the Debtor has not yet retrieved those books and records, although the Debtor testified that she has inquired of her counsel and requested that these documents be returned. The Debtor's testimony in this regard was vague, at best, and merely consisted of a brief description of some telephone conferences the Debtor had with her attorney with no details as to the actions taken by the attorney, other than that her attorney had requested the return of the documents and the documents had not been returned. The Debtor did not give any reason why her attorney did not request the return of these documents in a more aggressive and appropriate fashion, including requesting of this Court an order directing the Genesee County Sheriff's Department to return these documents.

The Trustee should not have to guess as to the nature, extent, and value of the Debtor's

8

assets, and neither should creditors of the Debtor or this Court. Even after approximately one year of investigation by the Trustee, including the initiation and prosecution of this adversary proceeding, the Trustee is not much closer to understanding the Debtor's holdings. While the Court understands that the Debtor has had some complications throughout her life, the record before this Court is such that the Court concludes that the Debtor has not met the duties imposed upon her by 11 U.S.C. § 727(a)(3). The discharge is therefore denied pursuant to 11 U.S.C. § 727(a)(3).

Section 727(a)(5)

11 U.S.C. § 727(a)(5) provides that the court shall grant the debtor a discharge unless "the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities." The purpose of this section was explained by the court in *Kovacs v. McVay (In re McVay)*, 363 B.R. 824 (Bankr. N.D. Ohio 2006):

> This section is derived from competing concerns: (1) the trustee and creditors' right to question the debtor about their financial affairs; and (2) the knowledge that debtors will not always be completely forthcoming with information about their financial activities. Section 727(a)(5) seeks to address these competing concerns by conditioning discharge on a debtor satisfactorily explaining any prepetition diminution or loss of asset. In order to achieve this, paragraph (a)(5) requires debtors to disclose all vital information; there is no requirement of mal-intent or scienter. In addition, it does not matter under § 727(a)(5) how the loss or deficiency occurred. For example, money spent on illegal activities does not run afoul of § 727(a)(5). Section 727(a)(5) is simply concerned with the adequacy of the debtor's explanation.

*Id.* at 830-31 (citations omitted).

To satisfy her initial burden of proof, the trustee must show two things: first, that the debtor had a cognizable ownership interest in a specific asset, and second, that the debtor's interest existed at a time not too far removed from when the petition was filed. *Id.* at 831. Once the trustee has met

9

her burden, the debtor must satisfactorily explain the loss. The standard for a satisfactory explanation under § 727(a)(5) "is one that is reasonable under the circumstances." *Id.* (quoting *Lacy Wholesale & Main Factors v. Bell (In re Bell)*, 156 B.R. 604, 605 (Bankr. E.D. Ark. 1993). A reasonable explanation involves capacity for verification. The explanation should enable a trustee to investigate the circumstances of the loss. *Id*.

In addition to the reasons stated above, the Court likewise finds that the Debtor has failed to account for her assets. Most notably, there is no mention of MRES in any of the Schedules or Statement of Financial Affairs. Although the Debtor testified that MRES discontinued operations in mid-2007, the Plaintiff should not be required to be satisfied with that response alone.

Likewise, the complete lack of disclosure of the Debtor's interest in AOI is troubling. The Debtor stated that AOI was merely a predecessor of FTS, but the stock ownership of AOI was different, and AOI had a separate tax identification number from FTS. Again, the Plaintiff was left with no information for which she can assess the value, if any, of AOI.

Finally, the Court must note that the Debtor in this case has held herself out as being a competent tax preparer and bookkeeper since the early 1980's. The Debtor holds an associate's degree and has undoubtedly gained decades of experience in the financial area through her occupation. With this backdrop, the Court concludes that the Debtor is not entitled to a discharge under either 11 U.S.C. § 727(a)(3) or (5).

Since the Court concludes that the Debtor is not entitled to a discharge pursuant to 11 U.S.C. § 727(a)(3) and (5), the remaining claims of the Plaintiff are dismissed as moot.

The Court has entered an Order consistent with this Opinion.

**Signed on July 20, 2009**

                                                        **/s/ Daniel S. Opperman**
                                                        **Daniel S. Opperman**
                                                        **United States Bankruptcy Judge**

11

08-03100-dof   Doc 32   Filed 07/20/09   Entered 07/20/09 08:53:02   Page 11 of 11